553 So.2d 522 (1989)
In re Inquiry Concerning Justice Court Judge C.L. QUICK.
No. 89-0509.
Supreme Court of Mississippi.
November 22, 1989.
*523 Luther T. Brantley, III, Jackson, for petitioner.
James E. Smith, Jr., Carthage, for respondent.
En Banc.
ANDERSON, Justice, for the Court:
This cause comes before this Court pursuant to the recommendation of the Mississippi Commission on Judicial Performance, that Judge C.L. Quick be removed from the Office of Justice Court Judge for willful misconduct in office, willful and persistent failure to perform the duties of his office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute.
C.L. Quick has been involved in public office for many years. He first served as constable and was elected Justice of the Peace and served in that capacity for twelve years until 1971, when he lost a bid for sheriff of Leake County. After shunning the political arena, Quick again threw his hat into the ring in 1983. That year he was elected Justice Court Judge, and he continues to serve in that capacity.
On August 1, 1988, the Mississippi Commission on Judicial Performance [hereinafter Commission] filed a Formal Complaint charging the Respondent, C.L. Quick, Justice Court Judge for the Western District of Leake County, Mississippi, with judicial misconduct constituting a violation of Section 177A, Mississippi Constitution, as amended (1890). On September 22, 1988, the Respondent filed an Answer to the Formal Complaint, admitting certain parts of the Formal Complaint, denying the remainder and denying that his actions constituted judicial misconduct. On January 26, 1989, a hearing was held before a committee of the Commission.
The Commission found by clear and convincing evidence that during the time beginning approximately January 1, 1985, and continuing through March 22, 1988, the Respondent, in his official capacity as Justice Court Judge of Leake County, Mississippi, adjudicated approximately 28 DUI cases wherein he did not file, within five days of adjudication, an abstract of the Court record of convictions with the Commissioner of Public Safety as required by Mississippi Code Annotated § 63-11-37(1) (Supp. 1988).
The Commission also found by clear and convincing evidence that during the period January 1, 1985 through January 13, 1988, the Respondent adjudicated approximately 552 routine traffic convictions in addition to the DUI cases, but he failed to report these to the Department of Public Safety within forty-five (45) days as required by MCA § 63-9-17 (Supp. 1988).
Based upon the evidence and these specific findings of fact, the Commission found by clear and convincing evidence that the Respondent's conduct violated Canons 1, 2 A, 2 B, 3 A(1) and 3 B(1) of the Code of Judicial Conduct of Mississippi Judges and that he violated Section 177A of the Mississippi Constitution (1890), as amended. Accordingly, the Commission recommended to this Court that C.L. Quick be removed from office pursuant to Section 177A of the Mississippi Constitution (1890).

DISCUSSION OF THE ISSUES

THE RESPONDENT'S CONDUCT CONSTITUTES WILLFUL MISCONDUCT IN OFFICE, WILLFUL AND PERSISTENT FAILURE TO PERFORM THE DUTIES OF HIS OFFICE AND CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE WHICH BRINGS THE JUDICIAL OFFICE INTO DISREPUTE.
The facts pertinent to this case are not in dispute. Quick has failed to file twenty-eight of his adjudications of DUI offenses and 552 other routine traffic offenses with the Department of Public Safety. It is *524 obvious to us that Quick violated the law as the following statutes outline his duties regarding the handling of traffic offenses:
MCA § 63-11-37 (Supp. 1988):
(1) It shall be the duty of the trial judge, upon conviction of any person under Section 63-11-30, to mail a copy of the abstract of the court record within five (5) days to the Commissioner of Public Safety at Jackson, Mississippi.
MCA § 63-9-17 (Supp. 1988):
(1) Every court shall keep a full record of the proceedings of every case in which a person is charged with any violation of law regulating the operation of vehicles on the highways, streets or roads of this state.
(2) Unless otherwise sooner required by law, within forty-five (45) days after the conviction of a person upon a charge of violating any law regulating the operation of vehicles on the highways, streets or roads of this state, every judge or clerk of the court in which such conviction was had shall prepare and immediately forward to the Department of Public Safety an abstract of the record of said court covering the case in which said person was so convicted, which abstract must be certified by the person so authorized to prepare the same to be true and correct.
Where a judge, either by neglect or refusal, fails to comply with any of the above requirements, he will have committed misconduct and it would be grounds for removal from office. MCA § 63-9-17(5) (Supp. 1988). The Commission believes, and we agree, that the gravity of Quick's failure to comply with the law constitutes willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office in disrepute.
It is obvious that the statutes apply to the justice court judge. He is a judicial officer included in § 63-9-17(5), and it is his duty to mail the abstract to the Commissioner of Public Safety pursuant to § 63-11-30. Respondent's failure to comply with the statute is a violation. For mitigation purposes, Quick tells us that he depended on the clerk of the justice court for filing the reports and that his handling of funds had never been questioned by the Mississippi Department of Audit. In addition, he had suffered a stroke and impaired vision during a part of the time set forth in the complaint.
Taking the above "excuses" into consideration, it is still apparent that Judge Quick violated the applicable statutes. The fact that he had never been audited is irrelevant because when an investigation was finally conducted, the evidence at hand was discovered. In addition, Quick continued to be judge after his stroke and his non-compliance continued when he was no longer suffering from the conditions of the stroke. Consequently, these excuses do not justify sufficient evidence for mitigation to enable this Court to alter the recommendation of the Commission. This Court has explained that:
Willful misconduct in office is the improper or wrongful use of power of his office by a judge acting intentionally or with gross unconcern for his conduct and generally in bad faith. It involves more than an error of judgment or a mere lack of diligence. Necessarily, the term would encompass conduct involving moral turpitude, dishonesty, or corruption, and also any knowing misuse of the office, whatever the motive. However, these elements are not necessary to a finding of bad faith. A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith... .
Willful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute. However, a judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute.
In Re Anderson, 412 So.2d 743, 745 (Miss. 1982) (quoting In Re Nowell, 293 N.C. 235, 237 S.E.2d 246, 255 (1977)) (emphasis in original); see also In Re Garner, 466 So.2d *525 884, 885 (Miss. 1985); In Re Stewart, 490 So.2d 882, 884 (Miss. 1986); In Re Collins, 524 So.2d 553 (Miss. 1987). Moreover, this Court can generally recognize examples of such conduct when presented before the Court. Anderson, 412 So.2d at 752 (Hawkins, J., specially concurring).
In Collins this Court addressed the judge's responsibility in keeping records pertaining to misdemeanor and traffic cases. Collins, a county court judge, had decided more than one hundred misdemeanor cases and the circuit clerk had failed to keep adequate records of the disposition of those cases. 524 So.2d at 554. In addition, Collins had failed to report one DUI conviction as required by statute. Id. Although Collins had engaged in other forms of misconduct, this Court addressed his violations of § 63-9-17 and concluded that "[a]lthough the clerk performs the physical act of record keeping, the judge is ultimately responsible for the administration of his court." 524 So.2d at 555. Therefore, Collins' failure to keep records and make reports of the proceedings before him justified his removal from office. Id. at 557; see also, MCA § 63-9-17(5) (Supp. 1988).
The Respondent contends that it may not be appropriate to hold him to the same standard as Collins because Collins was a county court judge, who is charged with a higher degree of care and competence than a justice court judge. 524 So.2d at 557. Moreover, Collins' duties required increased responsibility and a heightened knowledge of the law. Id.
This may be true; however, this Court emphasized Collins' status as a county court judge because he had claimed to be ignorant of both the law and procedure of administering his court. This argument was at best senseless because what he in fact was saying to this Court was "tantamount to an admission by an accused judge that he [did] not possess the qualifications necessary to hold the office to which he [had] been elected." 524 So.2d at 557. Similarly, a casual reading of our decisions reveals our oft repeated warning that the
[o]fficial integrity of our Justice Court Judges is vitally important, for it is on that level that many citizens have their only experience with the judiciary. We may not tolerate misconduct or misfeasance on any ground, particularly not on grounds of ignorance or incompetence.
Garner, 466 So.2d at 887; see also Stewart, 490 So.2d at 885, and Collins, 524 So.2d at 557.
The Respondent further contends that the holding in In Re Bailey, 541 So.2d 1036 (Miss. 1989), allows this Court to impose sanctions other than removal from office. In Bailey, this Court found that Justice Court Judge Bill Bailey had engaged in judicial misconduct warranting sanctions. Id. at 1039. But, the Court also recognized that any sanction should fit the offense. Id. Consequently, since Bailey had not acted with malice or improper motive, and he had not personally benefitted from his actions, the Court accepted the recommendation from the Commission for a public reprimand. Id. at 1039-40. Moreover, this was Bailey's first offense and the Court had never "removed a judge from office for a first offense where he has not profited in some way from his misconduct... ." Id. at 1040.
On the one hand the case sub judice is similar to Bailey. In the Respondent's brief, he alerts the Court to the fact that this is his first offense and that there is no evidence that he either acted with malice, improper motive, or that he had gained from his actions. Therefore, for the sake of "principled consistency with other like cases," this Court should impose sanctions less than removal from office. Bailey, 541 So.2d at 1039.
On the other hand, the Respondent should have some difficulty relying on Bailey because that case can easily be distinguished from the circumstances involved in his case. In Bailey, for example, this Court focused its attention on one case where charges of judicial misconduct arose. In this case, the Court cannot merely look to one instance of judicial misconduct; nor is the Court limited to even five or ten instances. Judge Quick has engaged in a long-standing course of misconduct, and he even continued to act outside the scope of *526 his duty after the original Complaint in this matter was filed. These instances for violating one statute total some five hundred fifty-two (552), and each violation requires his removal from office. MCA § 63-9-17(5) (Supp. 1988). Furthermore, he violated another statute at least twenty-eight (28) times. MCA § 63-11-37(1) (Supp. 1988). It is this type of behavior that warps citizens' perceptions of justice in our judicial system, and strips the system of credibility and integrity.
It does not matter that Judge Quick may not have known the law; that he was negligent; or that he did not understand the law. "When he assume[d] the office of Justice Court Judge in this state, he [accepted] the responsibility of becoming learned in the law." Bailey, 541 So.2d at 1039. Surely the people of Leake County expected their judge at least to be familiar with the law and abide by it. Indeed, it shocks the conscience that Quick admits to having never looked at the statutes or the Code of Judicial Conduct. And, we must ask, how can judges serve the public without looking to the law for guidance? Let it be clear that justice court judges are indeed judges. Id.
If there is any doubt as to whether sanctions are appropriate, Quick admits that he attended seminars discussing these statutes. He also admits that his actions are violations of the Code of Judicial Conduct of Mississippi Judges, particularly:
CANON 1
A Judge Should Uphold the Integrity and Independence of the Judiciary
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.
CANON 2
A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities
A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
B. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness.
CANON 3
A Judge Should Perform the Duties of His Office Impartially and Diligently
The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:
A. Adjudicative Responsibilities.
(1) A judge should be faithful to the law and maintain professional competence in it. He should be unswayed by partisan interests, public clamor, or fear of criticism.
B. Administrative Responsibilities.
(1) A judge should diligently discharge his administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court officials.
(2) A judge should require his staff and court officials subject to his direction and control to observe the standards of fidelity and diligence that apply to him.
Therefore, we accept the Commission's finding that Judge Quick willfully failed to perform his duties, and this conduct brings the judicial office into disrepute.

*527 PROPOSITION II

THE RESPONDENT SHOULD BE REMOVED FROM OFFICE PURSUANT TO SECTION 177A OF THE MISSISSIPPI CONSTITUTION
The Commission, based upon its findings, unanimously agreed that Judge Quick be removed from office. We agree.

DISCUSSION OF LAW
In judicial misconduct proceedings, this Court is the trier of fact, and it has sole power to impose sanctions. Garner, 466 So.2d at 885; Collins, 524 So.2d at 556. Although this Court has an obligation to conduct an independent inquiry, it nonetheless gives great weight to the finding of the Commission, which has had the opportunity to observe the demeanor of the witnesses. Garner, supra at 885; Collins, supra at 556. However, this Court is not bound by any recommendations of the Commission.
Judge Quick has failed to do that which is required by law. See, MCA §§ 63-9-17 (Supp. 1988); 63-11-37 (Supp. 1988); 63-9-17(5) (Supp. 1988). Not only has he failed to comply with the law in a handful of cases, but he failed to comply for nearly six hundred cases over a three year period. His defense is basically negligence and ignorance. The statutes, however, are clear. The judge shall have committed misconduct, whether by refusal or neglect, when he fails to comply with any of the requirements of the statutes. It is this misconduct that constitutes grounds for removal. See e.g., Collins, 524 So.2d at 557 (failure to keep records justifies removal under § 63-9-17). Furthermore, his misconduct does not have to be embedded in any form of bad behavior because "ignorance and incompetence, not amounting to bad faith behavior in a manner prejudicial to the administration of justice, bring the judicial office into disrepute." Stewart, 490 So.2d at 884; Anderson, 412 So.2d at 743. See also Garner, 466 So.2d 884.
Judge Quick's actions may seem insignificant in comparison to other cases presented before this Court where the judge had profited in some way from his misconduct. However, the Commission was aware that this Court had never removed a judge from office for a first offense; yet, it recommended this sanction because his violations were long-standing and continuous over a three year period affecting nearly six hundred cases. Judge Quick, like other justice court judges, "attend[s] seminars, [is] provided ample information and [is] afforded virtually unlimited sources of counsel and advice to enable [him] in simple cases ..." Anderson, 412 So.2d at 753 (Hawkins, J., specially concurring). Indeed, these were simple cases. All that was required of Judge Quick was that he file his reports with the Public Safety Commissioner. He was required to do this for at least two reasons:
(1) notice of the conviction is forwarded to the Mississippi Safety Patrol for its records, possibly precipitating the suspension or revocation of one's license; and
(2) the insurance carrier could choose to place such individual in a higher risk category.
Id. (Hawkins, J., specially concurring).
He failed the citizens of Leake County, the Mississippi Safety Patrol and other interested parties such as the insurance carriers. He neglected his duty for three years and continued to be negligent after the original complaint had been filed. His failure to act not only violated the Code of Judicial Conduct, but violated his statutory obligations as well.
[N]o judicial officer of this State, including any member of this Court, is immune from having his or her official conduct investigated by the Commission, and appropriate action taken by an impartial tribunal. This should certainly be a salutary development in the administration of justice for our people.
Id. at 750 (Hawkins, J., specially concurring) (footnote omitted).
Therefore, we accept the Commission's recommendation of removal from office because of his demonstrated pattern of repeated misconduct, because of the gravity *528 of the misconduct, and because the solemn enactment of our legislature mandates his removal from office.
This opinion shall constitute notice of removal of C.L. Quick from office. The Clerk of the Mississippi Supreme Court shall forward an attested copy of this opinion to the Secretary of State of Mississippi and the State Auditor of Mississippi.
JUDGE C.L. QUICK IS HEREBY REMOVED FROM THE OFFICE OF JUSTICE COURT JUDGE FOR THE WESTERN DISTRICT OF LEAKE COUNTY, MISSISSIPPI, EFFECTIVE NOVEMBER 22, 1989.
HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BLASS, JJ., concur.
DAN M. LEE, P.J., dissents without written opinion.
ROY NOBLE LEE, C.J., not participating.